**TRENK, DIPASQUALE, WEBSTER,
DELLA FERA & SODONO, P.C.**
347 Mt. Pleasant Ave., Suite 300
West Orange, NJ 07052
 (973) 243-8600
Anthony Sodono, III (AS 9426)
Michele M. Dudas (MD5029)
*Attorneys for Babyland Family Services, Inc.,
  Chapter 11 Debtor and Debtor-in-Possession*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: <br><br> BABYLAND FAMILY SERVICES, INC., <br><br> Debtor. | Case No. 11-23207 (DHS) <br><br> Chapter 11 |
| BABYLAND FAMILY SERVICES, INC., <br><br> Plaintiff-Debtor, <br><br> v. <br><br> NEW COMMUNITY CORP., <br><br> Defendant. | Adv. Pro. No. 11-____ (DHS) <br><br><br> **<u>VERIFIED ADVERSARY COMPLAINT</u>** |

Chapter 11 Debtor Babyland Family Services, Inc., Chapter 11 debtor and debtor-in-possession ("Debtor"), by and through its undersigned counsel, complaining of the above captioned Defendant, hereby states and alleges as follows:

### **<u>PARTIES</u>**

1. Plaintiff-Debtor Babyland Family Services, Inc., a not-for-profit New Jersey corporation, the Chapter 11 Debtor in the above captioned bankruptcy case, maintains a principal place of business at 755 South Orange Avenue, Newark, New Jersey. The Debtor's business consists of child care services, foster care services and serves as a domestic violence shelter.

2.     Defendant New Community Corp. ("NCC"), having a place of business at 233 W. Market Street, Newark, New Jersey 07103, is the landlord for the properties leased by the Debtor located at 200 South Orange Avenue, Newark, New Jersey ("South Orange Property") and 47 Humboldt Street, Newark, New Jersey ("Humboldt Property").[1]

## BACKGROUND FACTS

3.     The Debtor filed its voluntary Chapter 11 proceeding on April 28, 2011 (the "Petition Date").

4.     In August 1969, Babyland Nursery was formed as a coalition for low-income parents who did not have access to childcare. It was the first and largest non-profit interracial infant childcare program in the State of New Jersey at the time.

5.     In 1979, the Babyland Domestic Violence Shelter was established as Essex County's first family violence program (the "Shelter"). The Shelter provides twenty-four (24) hour crisis intervention, shelter, counseling, legal and housing advocacy, as well as community education for victims of family violence. In addition, the program provides counseling for batterers to prevent the cycle of violence and also training for response teams to better intervene on behalf of victims.

6.     In 1989, the Debtor established one of the nation's first childcare programs for infants and toddlers affected by AIDS and the HIV virus. It was the first childcare facility in the State of New Jersey offering these services, and it filled a critical gap in providing child development and family support services for the children and their families.

7.     Consistent with its mission to strengthen family life and to provide permanency for children, in 1993, Babyland established the Children Together Foster Care Program ("Foster

---

[1] Additionally, NCC financed the acquisition of the Properties (defined below) and is a secured creditor in this Chapter 11 proceeding.

Program"). The Foster Program is another first in Essex County. In partnership with the New Jersey Division of Youth and Family Services ("DYFS"), the program keeps sibling children, who are separated from their parents, together and protects them from abuse or neglect. Siblings are later placed in homes where parents are recruited and trained by Babyland staff. Together, in stable foster home environments, they are either placed in adoption or later reunited with their natural parents or a biological member of their family. Currently, the Foster Program houses seven (7) teenage girls.

8. Additionally, Babyland has established a group home for siblings in crisis and has successfully recruited, trained and retained over one-hundred thirty-five (135) resources (or foster) parents. The Infant Care Program, an extension of the foster care services, removes boarder babies, infants who have been either abandoned or taken into protective custody, from hospitals. The Debtor places these infants with nurturing and loving resource parents and strives to reunite them with natural parents or a biological member of their family.

9. The Debtor expanded its business to offer child and family development programs at five (5) facilities, through age-appropriate curricula and certified caregivers, teachers and counselors. These professionals seek to enhance the emotional, social, physical and intellectual development of over four-hundred (400) students, with ages ranging from three (3) months to thirteen (13) years old.

10. All of the Debtor's childcare centers offer full-day services and vital health services. The Debtor also offers a child development and parent education program for numerous abused and neglected children and their parents.

11. Annually, the Debtor provides services for over one-thousand (1,000) families. To facilitate these services, the Debtor employs approximately one-hundred eighteen (118) employees.

12. The Debtor is funded primarily by two (2) federal grants, and various State, County and City grants. Additionally, the Debtor contracts with DYFS on a monthly and per child basis for revenues.

13. Moreover, voucher payments are made with respect to attendance at the different facilities. A voucher is sent to the Debtor indicating participations of the parents in the program and staff members of the Debtor return them to the Child Care Referral Agency, with the attended days for each child.

14. The Debtor owns the real properties located at 753, 755-757, 763, 765 -767 South Orange Avenue, Newark, New Jersey. The property located at 755 South Orange Avenue serves as an administrative building and community center. This facility is commonly referred to as "Babyland I." The Debtor believes the property housing the administrative building and community center has a fair market value of approximately $500,000. There adjoining properties consist of vacant lots ("Vacant Lots"), that have a combined value of an additional $400,000 (755 South Orange Avenue and the Vacant Lots are collectively referred to as the "Properties").

15. The Foster Program operates out 540 Ridge Street, Newark, New Jersey. The lease for this property expires in August 2011, and the Debtor intends on renewing same for a period of three (3) years.

16. Additionally, the Debtor operates the Bakery Village Child Care Center out of 490 4th Avenue, East Orange, New Jersey ("Care Center"). The Care Center houses

approximately sixty (60) children and is part of the Abbott Program. The lease for this property was renewed in or about November 2010 and expires in or about November 2013.

17. Approximately two and one-half (2 ½) years ago, the current administration of the Debtor took over.

18. The Debtor's Board Members are: (a) E. Garcia Murray, Board President; (b) Grady Ford; (c) Marsha Wilkerson; (d) Dr. Naithan Allen; and (e) Dr. Barry H. Smith. Wesley N. Jenkins is the Executive Director of the Debtor.

19. The Debtor's Properties are insured and holds all appropriate licenses for facilities of this nature. There are no license violations.

**The NCC Leases**

20. The Debtor's daycare program operates out of 200 South Orange Avenue, Newark, New Jersey (the "South Orange Property"). This facility is commonly referred to as "Babyland III."

21. The Debtor entered into the Lease with NCC for the South Orange Property in or about January 2002. Pursuant to the Lease, there is a contractual termination date of December 31, 2011.

22. Currently, there is a Warrant for Removal and Possession for the South Orange Property scheduled for May 2, 2011.

23. The Shelter is operated out of 47 Humboldt Street, Newark, New Jersey (the "Humboldt Property").

24. The Debtor entered into the Lease with NCC for the Humboldt Property in or about July 2008. The Lease expired on its own terms in or about March 2011.

25. The Debtor intends on voluntarily vacating the Humboldt Property, but has been unable to find sufficient rental space to house the residents of the Shelter, which include battered and abused women and their children.

26. Currently, there is a lockout scheduled at the Humboldt Property for Monday, May 2, 2011.

**Reasons for Debtor's Bankruptcy Filing**

27. In January 2002, the Debtor obtained a mortgage from NCC in the amount of $956,625 for the purpose of purchasing the Properties. The mortgage and underlying note are secured by the Properties. The Note provides for interest at the rate of two (2%) percent.

28. In or about October 2009, NCC commenced litigation against the Debtor for alleged default under the loan documents in Superior Court of New Jersey, Essex County Law Division, as well as a corresponding foreclosure action (collectively, the "Lawsuit").

29. Since that time, the Debtor has been in negotiations with NCC and defending the Lawsuit.

30. Additionally, the new administration has settled over three million ($3,000,000) dollars in debt, through payment arrangements, paying down liabilities, or settlement.

31. The Debtor was also made to repay the State of New Jersey, Department of Children & Families approximately $900,000 that was overpaid to the last administration.

32. Unfortunately, due to the assumed liabilities from the former administration, the Debtor has been unable to pay its debts as they come due.

33. The Debtor owes the State of New Jersey, Department of Labor approximately $1,800,000 for payroll taxes. The Debtor has engaged in a payment plan with the Department of Labor to pay the taxes over the course of five (5) years, based upon monthly payments.

34. Despite pre-petition attempts to amicably resolve pending litigation and contested matters, the Debtor filed the underlying bankruptcy case in an attempt to reorganize its business and, most importantly, to protect and continue to serve their clients, and the community as a whole.

35. The immediate cause for the filing was the Debtor's removal from the South Orange Property and the Humboldt Property.

36. After the Chapter 11 case was commenced, counsel to NCC advised that the automatic stay provisions of 11 U.S.C. § 362(a) were inapplicable as it pertains to tenancy actions for non-payment of rent in commercial properties.

37. NCC advises that it intends to go forward with the steps to formally evict the Debtor on May 2, 2011 from both the South Orange Property and the Humboldt Property.

38. The Debtor disagrees with NCC's position and seeks an injunction, prohibiting NCC from evicting the Debtor from the South Orange Property and/or the Humboldt Property.

## **COUNT ONE**
**(Reimposition of Stay Pursuant 11 U.S.C. § 362)**

39. The Debtor repeats and realleges all of the foregoing allegations as if set forth at length herein.

40. Pursuant to 11 U.S.C. § 362(a), except as provided in 11 U.S.C. § 362(b), the filing of a bankruptcy petition operates as a stay, applicable to all entities, of:

> (1) The commencement or continuation, including the issuance or employment of process, of a judicial, administrative or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case of this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> (2) The enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of a case under this title;

7

    (3) Any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

    (4) Any act to create, perfect or enforce any lien against property of the estate;

    (5) Any act to create, perfect or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

    (6) Any act to collect, assess, or recover a claim against the debtor, that arose before the commencement of the case under this title

*   *   *

41. Pursuant to 11 U.S.C. § 362(b)(10), the filing of a bankruptcy petition does not operate as a stay for "any act by a lessor to the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property."

42. The Lease for the South Orange Property does not have a contractual termination date until December 31, 2011.

43. The Debtor intends on paying any future rents as they become due.

44. Thus, absent authority by this Court, the automatic stay provisions of 11 U.S.C. § 362(a) are in effect.

45. NCC's intentional disregard of the stay provisions has caused the Debtor harm and caused the Debtor to incur unnecessary attorney's fees and costs.

46. The Debtor needs these critical days after the bankruptcy filing to focus on its reorganization efforts and, most importantly, focus on the patrons of various services provided by the Debtor.

**WHEREFORE**, the Debtor seeks an Order declaring that the automatic stay provisions of 11 U.S.C. § 362(a) are in effect.

## COUNT TWO
**(Equitable Relief)**

47. The Debtor repeats and realleges the allegations set forth above as if set forth at length herein.

48. Section 105(a) of the Bankruptcy Code provides as follows:

> The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

49. Assuming, <u>arguendo</u>, this Court determines that the automatic stay provisions are not in effect for the South Orange Property and/or Humboldt Property, pursuant to this Court's equitable powers, the automatic stay provisions must be imposed to provide the Debtor with a "breathing spell" and sufficient time to find alternative space for its Shelter.

50. The Debtor provides critical and, at times, life-saving services to the public. If the Debtor were "locked out," its vital services would be interrupted and the lives of many abused and/or underprivileged families would be detrimentally affected.

**WHEREFORE**, the Debtor seeks an Order granting the injunctive relief, prohibiting the stay to be lifted for a period of time sufficient for the Debtor to find alternate housing arrangements for the Shelter, and such and further relief as is just and equitable.

## COUNT THREE
**(Damages Against NCC for Willful Violation of the Automatic Stay)**

51. The Debtor repeats and realleges the allegations set forth above as if set forth at length herein.

52. Despite its knowledge of the Debtor's bankruptcy filing, NCC advised that it intended to proceed with the lockout of the South Orange Property and Humboldt Property for Monday, May 2, 2011.

53. As such, the Debtor was forced to file this adversary proceeding and incur substantial costs and fees in doing so.

**WHEREFORE**, the Debtor seeks damages against NCC pursuant to 11 U.S.C. § 362(k).

                                                  **TRENK, DIPASQUALE, WEBSTER,**
                                                  **DELLA FERA & SODONO, P.C.**
                                                  *Attorney for Babyland Family Services, Inc.,*
                                                    *Chapter 11 Debtor and Debtor-in-Possession*

Dated: April 28, 2011                          By: */s/ Anthony Sodono, III*
                                                        Anthony Sodono, III

## VERIFICATION PURSUANT TO 28 U.S.C. §1746

I, Wesley N. Jenkins, Executive Director of Babyland Family Services, Inc., Chapter 11 Debtor in the above case, hereby verify the foregoing statements are true and correct to the best of my knowledge and belief.

Dated: April 28, 2011                                            */s/ Wesley N. Jenkins*
                                                                          WESLEY N. JENKINS